**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ELAINE RENEE PATTERSON,

        Plaintiff,

v.                                                                                                                          CV 11-0240 WPL/KBM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Elaine R. Patterson filed an application for Supplemental Security Income payments on April 13, 2007,[1] alleging disability due to depression, hepatitis C, adult Attention Deficit Disorder ("ADD"), and chronic pain in the back, neck, left leg, left knee, and left arm. (Administrative Record ("AR") 103.) Administrative Law Judge ("ALJ") W. Thomas Bundy held a hearing on July 20, 2009. (AR 25.) He determined that Patterson was not under a disability as defined by the Social Security Act; therefore, he denied her application for benefits. (AR 20.) Patterson filed an appeal, but the Appeals Council declined her request for review, making the ALJ's decision the final decision of the Social Security Administration ("SSA"). (AR 1.)

Patterson sought a review of the SSA's decision on March 17, 2011 (Doc. 1), and she filed a Motion to Remand to Agency for Rehearing on July 14, 2011 (Doc. 17). The Commissioner of the SSA ("Commissioner") responded (Doc. 18), and Patterson filed a reply (Doc. 19). Pursuant to 28 U.S.C § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to have me

---

[1]The date listed on her application is April 13, 2007. (AR 85.) The Administrative Law Judge stated it was April 12, 2007.(AR 11.) I will use the date listed on the application.

serve as the presiding judge and enter a final judgment. (*See* Doc. 4; Doc. 10.) After having read and carefully considered the entire record, I grant Patterson's motion and remand the case for further consideration consistent with this opinion.

## STANDARD OF REVIEW

In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). A "decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* (quotation omitted). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *See id.* The ALJ's "failure to apply the correct legal standards, or to show us that she has done so, are also grounds for reversal." *Winfry v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 416.920(a)(4). At the first three steps, the ALJ considers the claimant's current work activity and the medical severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4). Before reaching step four, the ALJ determines the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 416.920(e). In the fourth step, the ALJ considers the claimant's RFC and functional requirements of past relevant work to see if the claimant is still capable of performing his or her past job. *See* 20 C.F.R. § 416.920(f). If a claimant

is not prevented from performing her past work, then she is not disabled. *Id.* If the claimant cannot return to her past work, then the Commissioner must show at the fifth step that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25. *See also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

**FACTUAL BACKGROUND**

Patterson is a forty-one year-old high school graduate who worked as a nursing aide until 2002. (AR 104, 108.) She was not employed for the five years leading up to her alleged onset date. (AR 99, 104.) She has a history of drug abuse and completed rehabilitation programs at the University of New Mexico Hospital and the Turquoise Lodge. (AR 166, 174, 178.) In 2004, Patterson was in a car accident, in which she sustained injuries to her back, left shoulder, left knee, and her neck. (AR 223, 228.) In addition to her physical ailments, Patterson has been diagnosed with Bipolar II Disorder, an unspecified mood disorder, a general anxiety disorder, post-traumatic stress disorder ("PTSD"), and ADD. (AR 177, 209, 232, 238, 276, 304.) She claims that this causes her paranoia, anxiety, depression, hallucinations, difficulty expressing herself, and difficulty concentrating and getting along with others. (AR 104, 140.)

The record regarding Patterson's mental health treatment dates back to 2006. Patterson began a drug abuse rehabilitation program in July 2006 at the University of New Mexico. (AR 210.) During intake, the doctor assessed her Global Assessment of Functioning ("GAF") score at forty-

five, and diagnosed her with ADD[2] and depression. (AR 177, 209.) She was discharged from the program in February 2007. (AR 166.) She then sought medical treatment at Presbyterian Family Health Care. (AR 213-219, 263-65.) She was referred to E.B. Hall, M.D., and Janice M. Penn, Ph.D., CNS, for her mental health treatment. (AR 268-89, 290-320.) Dr. Penn filled out a Mental RFC Assessment of Patterson on July 2, 2009. (AR 311-14.) In addition to Dr. Penn's mental evaluation, the record contains six consultative evaluations from various physicians and psychologists, including from John Vigil, M.D. (AR 222-27), Eileen M. Brady, M.D. (AR 228), Louis Wynne, Ph.D. (AR 229-33), J. LeRoy Gabaldon, Ph.D. (AR 235-47), David P. Green, M.D. (AR 256), and Scott R. Walker, M.D. (AR 256-59).

## THE ALJ'S DECISION

The ALJ reviewed Patterson's claim pursuant the five-step sequential evaluation process. (AR 12-13.) He first determined that Patterson had not engaged in substantial gainful activity since her onset date. (AR 13.) He then found that she had the following severe impairments: chronic back pain, most likely secondary to degenerative spine disease; chronic left knee pain, most likely chondromalacia patella; chronic neck pain; myofascial strain; Bipolar II Disorder; depression; generalized anxiety disorder; and PTSD. (*Id*.) He also found that she had a history of ADD and hepatitis C. (*Id*.) Since she did not have an impairment or a combination of impairments that are identified in the SSA regulations as a disability, he proceeded to evaluate her RFC. (AR 13-14.) He concluded that she could perform light work, subject to the mental limitations identified by Dr. Walker in his consultative mental RFC assessment. (AR 14, 18-19.) The ALJ discussed the opinions of Dr. Hall and Dr. Penn, Patterson's treating physicians, in his step four analysis. (AR 17-18.) He

---

[2]ADD and Attention Deficit Hyperactivity Disorder ("ADHD") are used interchangeably in the medical records. I will use the term ADD.

4

rejected Dr. Penn's GAF score, and adopted the opinions of Dr. Walker, as opposed to Dr. Penn, on the ground that they "are not that different." (AR 18.)

Since Patterson did not have any prior relevant past work, the ALJ proceeded to step five. During the hearing, he had asked a Vocational Expert (VE) if there were any jobs that exist in significant numbers in the national economy that Patterson could perform. (AR 19, 26.) The VE told the ALJ that Patterson could perform two jobs and that those two jobs existed in significant numbers in New Mexico. (AR 26.) The ALJ quoted the VE's testimony approvingly, and concluded that since Patterson could perform available work, she had not been under a disability. (AR 20.) Accordingly, he denied her application for benefits. (*Id.*)

## DISCUSSION

The duty of the ALJ to consider all of the medical evidence is thoroughly outlined in the SSA's published rules. 20 C.F.R. § 416.913(d). *See generally* 20 C.F.R. § 404. However, not all medical opinions are treated equally. Under the treating physician rule, the ALJ must show deference to the opinion of a treating physician. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (describing the ALJ's duties under the treating physician rule); *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (same); *Washington,* 37 F. 3d at 1441 (holding that treating physicians are entitled more weight as a matter of law).

There are two distinct steps the ALJ must follow when analyzing the value of a treating physician's opinion. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must decide whether to grant the treating physician's opinion controlling weight. *Id.* Her opinion will be entitled to controlling weight if it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with other substantial evidence.'" *Doyal,* 331 F.3d at 762 (quoting 20 C.F.R. § 416.927(d)(2)). If the ALJ decides not to afford the opinion controlling

5

weight, then the ALJ must move to the second step and "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. Those reasons must be evident in the ALJ's notice of determination or decision. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citations omitted).

SSA regulations and rulings provide a list of factors the ALJ should consider when assigning weight, which include: the length of the treatment relationship; the nature and extent of the relationship; the objective medical evidence; consistency with other records; whether the doctor is a specialist; and other factors brought to the ALJ's attention. *See* 20 C.F.R. § 416.927(d); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). The ALJ may "reject a treating physician's opinion outright only on the basis of contradictory medical evidence." *McGoffin v. Barnhart*, 122 F.3d 1248, 1252 (10th Cir. 2002) (citing *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). However, it is impermissible for an ALJ to reject an opinion solely "due to his or her own credibility judgements, speculation or lay opinion." *Id.*

Patterson argues that the ALJ did not adhere to the treating physician rule. (Doc. 17 at 6.) I agree. The record contains a mental RFC assessment and treatment notes from Dr. Penn, Patterson's treating psychologist. (AR 290-320.) The ALJ did not adopt the findings of Dr. Penn as controlling, which is not an error in itself. (AR 18.) However, the ALJ's outright rejection of Dr. Penn's GAF assessment for Patterson without sufficient explanation and his failure to discuss the degree of weight he ultimately assigned to Dr. Penn's opinion are reversible errors.

1. <u>GAF Score</u>

After a discussion of the findings by various mental health experts, the ALJ concluded "I do not give . . . Dr. Hall's diagnoses of a GAF at 41 any weight because . . . [it is] inconsistent with the

6

overall medical evidence." (AR 18.) The first error here is that Dr. Penn, not Dr. Hall, assessed Patterson's GAF at forty-one. (AR 309.) The second error is in the ALJ's explanation. The ALJ presents no real justification for his decision to discount Dr. Penn's opinion, aside from the assertion that it is "inconsistent." (*Id.*) Such a brief statement does not meet the requirement that the ALJ provide "specific, legitimate reasons" for granting a treating physician little weight. *Watkins,* 350 F.3d at 1301. In *Volak v. Chatter*, the ALJ rejected a treating physician's opinion that the claimant suffered from serious pain because he felt the opinion was "not medically substantiated." 1995 U.S. App. LEXIS 22571, at *5 (10th Cir. 1995) (unpublished). The court found that merely stating that an opinion is not "medically substantiated," without elaborating as to why it is unsubstantiated, is reversible error. *Id.* Likewise, the ALJ in this case concluded that Dr. Penn's GAF assessment was inconsistent with the record, but he failed describe the inconsistencies.

The Commissioner attempts to provide support for the ALJ's conclusions, arguing that the GAF is "inconsistent" because of its timing. (Doc. 18 at 5.) The Commissioner reasons that since Dr. Penn assigned Patterson a GAF score in the early phases of treatment, it was subsequently overridden when Dr. Penn later noted that she had only moderate symptoms in the July 2009 Mental RFC evaluation. (Doc. 18 at 5.) Patterson correctly points out that I may not consider this after the fact reasoning in determining whether the ALJ committed a legal error. (Doc. 19 at 1.) The ALJ's opinion must stand on its own, and the Commissioner cannot provide "a new, post-hoc rationale" for the ALJ's findings. *Krauser*, 638 F.3d at 1330 (holding social security appeals are subject to the general administrative law rule of *SEC v. Chenery Corp.*, 318 U.S. 80, 94-95 (1943), and *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), that an agency cannot offer post-hoc rationale for its decision). Since this timing argument is not in the ALJ's determination, I give it no weight.

Furthermore, the medical record lends support to the GAF score. The record contains four

GAF scores from four different physicians: 1) Dr. Penn assessed it at forty-one on August 28, 2008 (AR 309); 2) Dr. Wynne, a consulting physician, assessed it at forty-two on July 1, 2008 (AR 232); 3) Dr. Birkman, an evaluator at the University of New Mexico's Mental Health Center, assessed it at forty-five on October 31, 2006 (AR 189); and, 4) an evaluator[3] at the University of New Mexico's Hospital Addictions and Substance Abuse program also rated it at forty-five on July 10, 2006 (AR 209). Given that all four of the available GAF scores in the record are between forty-one and forty-five, it appears as if there is medical evidence to support Dr. Penn's conclusion.

In addition to the other available GAF scores, notes from Dr. Hall, Patterson's other treating physician, reinforce the validity of the GAF score. An individual with a GAF of 50 to 41 has "[s]erious symptoms (e.g. [sic] suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairments in social, occupational, or school functioning (e.g. [sic] no friends, unable to keep a job)." (AR 309.) Dr. Hall treated Patterson from March 2, 2008, to July 28, 2008. (AR 270-89.) In a letter, Dr. Hall wrote that Patterson "experiences panic attacks, mood swings, and she recently beat up another woman." (AR 276.) Dr. Hall noted that her moods were unpredictable (AR 286), and that Patterson frequently appeared depressed, stressed, and anxious (AR 270, 273, 278, 282, 283, 285, 286-87). In fact, while under Dr. Hall's care, Patterson had a panic attack while at a Walmart store. (AR 278.) These notes describe Patterson as an emotionally unbalanced individual and support Dr. Penn's conclusions that Patterson does have "serious impairments in social, occupational, or school functioning."

2.      Weight Assigned to Dr. Penn's Opinion

The ALJ failed to state the weight he assigned to Dr. Penn's opinion. Based on the fact that

---

[3]The name of the evaluator was not printed on the form, but there is a signature of a person that appears to read "Ruth Barton."

he adopted Dr. Walker's mental RFC evaluation, and not Dr. Penn's, it stands to reason that he gave Dr. Penn less than controlling weight. (AR 18.) The failure to explain why Dr. Penn received less than controlling weight is alone a reversible error. *Krauser*, 638 F.3d at 1330; *Watkins*, 350 at 1300. The failure to describe the degree of weight he ultimately gave Dr. Penn's opinion is another reversible error.[4] *Id.* The Commissioner claims that the ALJ did properly evaluate Dr. Penn's opinion when he summarized her findings in his determination. (Doc. 18 at 5 (citing AR 17).) The Commissioner is correct that the ALJ summarized her findings. However, a summary is not an analysis. A summary does not tell me if the opinion is treated as controlling, nor does it tell me the degree of weight the ALJ ultimately gave the opinion. A summary is not sufficient to meet the analytical requirement of the treating physician rule. Although I may stop here and reverse, I think it appropriate to discuss why the selection of Dr. Walker's evaluation over Dr. Penn's may have changed the outcome of the VE's testimony and, thus, why an explanation by the ALJ is important to a meaningful review.

Dr. Penn found that Patterson has moderate limitations in the following areas: 1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; 2) the ability to sustain an ordinary routine without special supervision; and 3) the ability to carry out very short and simple instructions. (AR 312.) Dr. Walker found only mild limitations in these areas. (AR 257.) This distinction came up during the oral hearing, at which the ALJ and Patterson's attorney questioned the VE regarding available jobs. (AR 21-44.) The ALJ's original hypothetical did not include an individual with moderate (or even mild) limitations in these three

---

[4]The Commissioner argues that Dr. Walker's opinion was more preferable because it contained a narrative explanation while Dr. Penn's evaluation was only in checklist form. (Doc. 18 at 6.) Again, because the ALJ did not raise this argument as to the format of the assessment in his determination, I cannot consider the merits of the Commissioner's argument on review. *See Krauser*, 638 F.3d at 1330.

areas. (AR 26.) Based on the ALJ's hypothetical, the VE found that Patterson could perform two jobs which are present in significant numbers in the national economy: a companion job and a job assembling small products. (*Id.*)

On cross-examination of the VE, Patterson's attorney asked if a person with moderate limitations in the ability to maintain a routine and regular attendance without special supervision could keep either job. (AR 41.) The VE stated that these jobs are "easily replaceable . . . [and] if the supervisor had to spend more time with the individual worker day after day after day after a while that would become . . . a problem." (AR 41-42.) Patterson's attorney also asked the VE if a moderate limitation in the ability to carry out very short and simple instructions would impact his findings. (AR 42.) The VE stated "Yes. Certainly with the companion job . . . ." (*Id.*) Ultimately, the VE concluded that moderate limitations in the aforementioned areas would not necessarily prevent Patterson from getting a job, but it would prevent her from maintaining one. (AR 42.)

It is clear from the VE's testimony that the difference in accepting Dr. Walker's opinion over Dr. Penn's opinion had an impact in how the VE assessed Patterson's ability to maintain work. The ALJ's failure to explain the degree of weight he afforded Dr. Penn's opinion is sufficient to warrant reversal, but I included this discussion of how the VE's opinion changed in order to highlight the importance of having clear explanations in the determination. Absent a thorough explanation of the ALJ's decision making process, I am left to guess why an opinion with the potential to change the outcome of the ALJ's findings was substituted for another.

Because I find that reversal is appropriate on Patterson's first argument, I will not discuss her second ground for relief.

## CONCLUSION

The ALJ failed to support his decision to minimize the opinion of Dr. Penn, Patterson's

treating psychologist. The ALJ disregarded Dr. Penn's GAF score without a meaningful justification, even though the medical record contained support for her assessment. He also chose to use Dr. Walker's evaluation over Dr. Penn's, which resulted in a noted difference in the VE's conclusions; yet, the ALJ offered no indication as to why he thought Dr. Walker's evaluation superior. Due to the failure of the ALJ to abide by the treating physician rule, I REVERSE and REMAND this case for further consideration consistent with this opinion.

      IT IS SO ORDERED.

                                                                        _____
                                                                         WILLIAM P. LYNCH
                                                                         UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.